# IN THE COURT OF APPEALS OF IOWA

No. 20-0880
Filed September 2, 2020

**IN THE INTEREST OF W.L.,**
**Minor Child,**

**W.L., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William Owens, Associate Juvenile Judge.

A father appeals the termination of his parental rights to his minor child. **AFFIRMED.**

Ryan J. Mitchell of Orsborn, Mitchell, Goedken & Larson, P.C., Ottumwa, for appellant father.

Thomas J. Miller, Attorney General, and Meredith Lamberti, Assistant Attorney General, for appellee State.

Mary Baird Krafka, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and May and Ahlers, JJ.

**AHLERS, Judge.**

A father appeals the termination of his parental right to his minor child, W.L. The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(f) and (g) (2020).[1] On appeal, the father argues: (1) he should be given additional time to work toward reunification; (2) terminating the father's parental rights is not in W.L.'s best interest; and (3) the juvenile court should have placed W.L. in the guardianship of W.L.'s paternal grandmother instead of terminating the father's parental rights.

## I.     Background

W.L. came to the attention of the Iowa Department of Human Services (DHS) in March 2017 after reports the father was not properly supervising W.L. W.L. was five years old at the time. On several occasions, law enforcement found the child roaming around the neighborhood, unattended by anyone, during times the father was responsible for caring for him.  When these occurrences did not stop in spite of law enforcement involvement, W.L. was adjudicated to be a child in need of assistance in June 2017.  W.L. was allowed to remain in the father's care after the father agreed to seek treatment recommended to him by the DHS, which included substance-abuse and mental-health evaluations and participation in family safety, risk, and permanency services.

W.L. remained with the father until March 2018.  At that time, the DHS received reports the father had been using illegal drugs.  When DHS spoke with the father about the allegations, he admitted he had used marijuana recently.  He

---

[1] The mother's parental rights were terminated in the same proceeding.  The mother does not appeal.

took a drug test soon after, which came back positive for amphetamines and methamphetamine. As a result, W.L. was placed in foster care, where he remained throughout these proceedings.

The father did not make adequate progress regarding substance-abuse and mental-health treatment, so DHS filed a petition to terminate the father's parental rights in February 2020. The father's parental rights were terminated in June 2020, and he appeals. Additional facts will be discussed as needed.

## II. Standard of Review

We review termination proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Discussion

The father's parental rights were terminated under Iowa Code section 232.116(1)(f) and (g). He does not challenge either ground on appeal. Therefore, we will not address the statutory grounds for termination. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) ("Because the father does not dispute the existence of the grounds [for termination], we do not have to discuss this step."). Instead, we will focus on the issues the father raises.

### A. Additional Time

The father first argues he should have been given additional time to work toward reunification. He points to the fact he progressed to semi-supervised visits with the child before the COVID-19 pandemic curtailed the visits. He asserts that,

but for the COVID-19 pandemic, he would have been receiving unsupervised visits by the time of the termination hearing and "it is likely [the] termination of parental rights hearing would have been continued or cancelled."

We are not persuaded by this speculative claim by the father. It is true the juvenile court is permitted to deny a request to terminate a parent's parental rights and give the parent an additional six months to work toward reunification. *See* Iowa Code §§ 232.104(2)(b), .117(5). However, before the court is permitted to grant such an extension, it must make a "determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b); *accord In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005) (noting that, when considering a six-month extension, the juvenile court should constantly keep in mind that, if the plan fails, the additional time is subtracted from the child's already shortened life in a better home).

We acknowledge the father demonstrated an ability to care for W.L. during visits. However, being able to successfully parent during relatively brief visits is a far cry from the ability to resume full-time care of a child. The father's shortcomings that prevented him from resuming full-time care of the child existed before the COVID-19 pandemic began and continued thereafter. Therefore, the curtailment of visits due to the pandemic had little, if anything, to do with the decision to terminate the father's parental rights. The father has not made adequate progress regarding substance-abuse and mental-health treatment, despite being given more than two years to do so. The father had substance-abuse assessments three times since W.L. was placed in foster care in March 2018. He failed to start treatment following two assessments, and he did not complete it after the third. He

failed to complete drug tests requested by DHS and was discharged from family treatment court for non-participation. The father expressed interest in attending residential substance-abuse treatment after the juvenile court directed the State to petition for termination, but he failed to follow through with that course of treatment as well.

The father has also been diagnosed with significant mental-health issues, resulting in recommendations for treatment. The father has not followed through with that treatment. While the father attended a number of individualized therapy sessions as directed between December 2019 and April 2020 and was taking appropriate medication, he was not following through with recommendations for therapy as of May 2020.

Given the father's lack of progress in the two years since W.L. was removed from his care, we cannot determine the need for removal will no longer exist after an additional six months. The juvenile court properly declined to grant such an extension.

### B.     Best Interest

We must next consider whether termination is in W.L.'s best interest. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) ("Even after we have determined that statutory grounds for termination exist, we must still determine whether termination is in the children's best interests." (quoting *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012)). We give primary consideration "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2).

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *P.L.*, 778 N.W.2d at 40. "Children simply cannot wait for responsible parenting." *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997). As noted above, it has been two years since W.L. was removed from the father's care and over three years since DHS became involved. In that time, the father has demonstrated that, while he can have positive interactions with W.L. during visits, he still struggles with substance-abuse and mental-health issues that prevent him from being a suitable full-time caregiver.

On top of the father's substance-abuse and mental-health issues, another concern is the father's lack of housing and stable employment. At the termination hearing, the father admitted that he had been homeless for three months, and his only source of income was "flipping" cars by repairing and selling them. These circumstances also prevent the father from being a suitable full-time caregiver.

W.L. is eight years old and has been in foster care for over two years. Termination is in his best interest because it will allow him to find permanent placement in a stable, nurturing home. The juvenile court correctly concluded termination is in W.L.'s best interest.

### C.     Guardianship

Finally, the father argues W.L. should have been placed in the guardianship of W.L.'s paternal grandmother rather than termination. We disagree. We first note, "a guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)).

We also note "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child." *C.K.*, 558 N.W.2d at 174.

The record indicates the grandmother is not a suitable placement for W.L. The grandmother is not in good health, and her living situation does not permit other people to live with her. She relies on a caregiver to take care of her. She is unable to drive herself, instead relying on the father to assist her in attending medical appointments. Finally, the grandmother has informed the DHS that, while she enjoys seeing the father and W.L., she could not take care of W.L. and did not want W.L. to come live with her.

## IV. Conclusion

Based on our de novo review, we conclude the juvenile court correctly terminated the father's parental rights.

**AFFIRMED.**